IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COBURN GROUP, LLC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07 C 2448 |
| | ) |
| | ) HONORABLE CHARLES R. NORGLE |
| | ) |
| WHITECAP ADVISORS, LLC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge:

Before the court is Defendant Whitecap Advisors LLC's Motion to Dismiss the Amended Complaint in whole, pursuant to Federal Rules of Civil Procedure 12(b)(2) or (3), to Transfer Venue pursuant to 28 U.S.C. § 1406(a), or in the alternative to dismiss Counts I and II pursuant to Rule 12(b)(6). For the following reasons, Defendant's Motions are denied.

### I. BACKGROUND[1]

#### A. Facts

On September 29, 2003, Plaintiff Coburn Group, LLC ("Coburn") entered into a contract ("Services Agreement") with Kingsport Capital, LLC ("Kingsport"), which provided Coburn with a non-exclusive right to solicit investors ("Introduced Parties") worldwide and introduce them to Kingsport. According to Coburn, the Services Agreement was to continue for three years, and for successive three year periods thereafter unless a party sent written notice that it

---

[1] The background information is taken from the Complaint, Defendant's Motion to Dismiss, and Plaintiff's Response to the Motion to Dismiss.

1

sought to terminate the agreement. The Services Agreement provided that Coburn would receive payments in the event that a prospective investor invested with either Kingsport, any affiliate of Kingsport having 50% or more common ownership with Kingsport, or any subsidiary of Kingsport. In the event that either party terminated the Services Agreement, Coburn would continue to receive payments based on the Introduced Parties' investment assets held by Kingsport, as long as the Introduced Parties assets remained with Kingsport.

In November 2003, Kingsport changed its name to Crestview Capital Partners, LLP ("Crestview"). According to Coburn, the Services Agreement continued to govern the relationship between Coburn and the newly-named Crestview. Then, on July 23, 2003, Eric Kamisher ("Kamisher") formed Sandhurst Capital Advisors, LLC ("Sandhurst"). In May 2004, Crestview purchased 51% or more of Sandhurst. On July 26, 2004, Kamisher and Crestivew changed the name of Sandhurst to Crestview Capital Advisors, LLC ("Crestview Advisors"). In August 2005, Crestview agreed to sell 51% or more of its interest in Crestivew Advisors. The sale occurred a year later, in August 2006. Then, on October 11, 2006, Crestview Advisors changed its name to Whitecap Advisors ("Whitecap").

On September 18, 2006, Whitecap sent a letter to Coburn, informing Coburn that it was terminating the Services Agreement. On November 23, 2006, Whitecap contacted Coburn, and stated that it would not continue to pay Coburn under the terms of the Services Agreement, but instead proposed a new fee schedule. On November 30, 2006, Coburn's counsel rejected the proposed fee schedule and demanded prompt payment of all the fees owed.

**B. Procedural History**

On May 2, 2007, Coburn filed this Complaint in the Northern District of Illinois for a Declaratory Judgment, as well as alleging breach of contract, promissory estoppel, and quantum

2

meruit. On August 31, 2007, Whitecap filed the current motion to dismiss in whole, to transfer venue, or in the alternative to dismiss Counts I and II. Coburn filed its Response on September 21, 2007, and Whitecap Replied on September 28, 2007. The motion to dismiss, or in the alternative, to transfer venue is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Once a defendant has challenged a court's exercise of personal jurisdiction, the plaintiff has the burden of demonstrating that the court's exercise of personal jurisdiction over a defendant is proper. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). It is well established law that "[a] federal court's exercise of personal jurisdiction over a non-resident defendant is proper 'only if a court of the state in which it sits would have such jurisdiction.'" Edelson v. Ch'ien, 352 F. Supp. 2d 861, 865-66 (N.D. Ill. 2005) (quoting Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995)); see also Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1212 (7th Cir. 1984). This court therefore has jurisdiction over this matter "'only if [an Illinois State Court ] would have such jurisdiction.'" Edelson, 352 F. Supp. 2d at 866 (quoting Klump, 71 F.3d at 1371).

The inquiry into whether this court has jurisdiction over these Defendants must therefore begin with "an application of the statutory law of [Illinois]." Jennings v. AC Hydraulic A/S, 383 F.3d 546, 548 (7th Cir. 2004). After considering Illinois' statutory framework concerning jurisdiction over non-resident defendants, the court must then consider whether its exercise of jurisdiction would "comport[] with due process." Id. at 549. The Seventh Circuit has determined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." Hyatt Int'l Corp. v. Coco, 302

F.3d 707, 715 (7th Cir. 2002). One due process inquiry is therefore sufficient. Edelson, 352 F. Supp. 2d at 866.

Under the Illinois Long-Arm Statute, 735 ILL. COMP. STAT. 5/2-209(a)(2), an Illinois court may exercise personal jurisdiction over a non-resident defendant "who in person or through an agent [engages in] [t]he commission of a tortious act within this State." See Edelson, 352 F. Supp. 2d at 866. Where the injury alleged is economic in nature, rather than physical or emotional, however, "the plaintiff needs to show more than the 'harm was felt in Illinois,' the plaintiff must also show an 'intent to affect an Illinois interest.'" Id. at 867 (quoting Real Colors, Inc. v. Patel, 974 F. Supp. 645, 649 (N.D. Ill. 1997)); see also Arthur Young & Co. v. Bremer, 554 N.E.2d 671, 676 (Ill. App. Ct. 1990). Illinois courts may also exercise jurisdiction where a defendant transacts "any business within this state." 735 ILL. COMP. STAT. 5/2-209(a)(1).

A court's inquiry into whether its exercise of jurisdiction over a nonresident defendant would be consistent with due process of law should begin with the familiar "minimum contacts" rule articulated by the United States Supreme Court in International Shoe Co. v. Washington:

> Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The Supreme Court, in Hanson v. Denckla, went on to explain that the necessary minimum contact with the forum state is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253 (1958).

The Supreme Court elaborated on the notion of "purposeful availment" in Burger King v.

4

Rudzewicz:

> This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random . . . contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State. Thus, where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burden of litigation in that forum as well.

471 U.S. 462, 475-76 (1985) (citations and internal quotation marks omitted). In addition to the concept of purposeful availment, "[t]he minimum contact requirement contains the notion of foreseeability." Deluxe Ice Cream, 726 F.2d at 1213 n.4 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). When a corporate defendant conducts activities within the forum state sufficient to establish minimum contacts, "it has clear notice that it is subject to suit there." Volkswagen, 444 U.S. at 297.

The court should not stop its inquiry into personal jurisdiction after simply determining that minimum contacts exist, however. The court should go on to ask whether exercising personal jurisdiction is reasonable. See Scott Fruehwald, *The Boundary of Personal Jurisdiction: The "Effects Test" and the Protection of Crazy Horse's Name*, 38 J. MARSHALL L. REV. 381, 384 (2004). A further aspect of a court's inquiry into personal jurisdiction is therefore the nature of the relationship among "the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). "This relationship must be such that it is reasonable to require a nonresident corporation to defend a suit in the forum state in the context of our federal system of government." Deluxe Ice Cream, 726 F.2d at 1213 (citing Volkswagen, 444 U.S. at

5

292-93).[2]

The Supreme Court has indicated that courts may exercise one of two sorts of jurisdiction over out-of-state defendants: general or specific. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). "General jurisdiction exists when the defendant has 'continuous and systematic' contacts with the forum state." Edelson, 352 F. Supp. 2d at 866 (quoting Helicopteros, 466 U.S. at 416). Where defendant has such contacts with the forum state, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." Hyatt, 302 F.3d at 713. In the absence of general jurisdiction, courts may exercise specific jurisdiction, which is limited to cases where the "litigation arises out of or is related to [the defendant's contacts with the forum state]." Logan Productions v. Optibase, 103 F.3d 49, 52 (7th Cir. 1996).

## B. Whitecap's Motion to Dismiss for Lack of Personal Jurisdiction

Whitecap asserts that as an out-of-state Defendant with no minimum contacts with the state of Illinois, a federal district court sitting in diversity jurisdiction in Illinois has no jurisdiction over it. The burden of showing that this court has personal jurisdiction over Whitecap therefore falls to Coburn. See Central States, S.E. & S.W. Areas Pension Fund v. Phencorp Reinsurance Co., 440 F.3d 870, 875 (7th Cir. 2006).

Coburn has demonstrated that Whitecap has had the following contacts with the State of Illinois. On April 1, 2004, Kamisher met with Andrew Coburn to discuss a possible business

---

[2] The court notes that the Supreme Court, in Calder v. Jones, 465 U.S. 783 (1984), did not establish a separate and distinct test for personal jurisdiction over out-of-state defendants. "[T]he so-called 'effects' test is merely another way of assessing the defendant's relevant contacts with the forum State." Wallace v. Herron, 778 F.2d 391, 395 (7th Cir. 1985). Under the "effects test," a court may exercise jurisdiction over an out-of-state defendant when that defendant, acting outside a state, causes harm within that state. Calder, 465 U.S. at 789.

6

relationship between Whitecap and Coburn. On July 14 and August 19, 2004, Kamisher visited Illinois to discuss investment opportunities with four different Illinois-based investors. On April 19, 2005, Kamisher traveled to Illinois to participate in a meeting with Coburn and a Chicago-based investor. Whitecap sent Coburn materials regarding Whitecap's investments on April 6 and 11, August 16, and December 8, 2004. Additionally, in December 2004 and December 2005, Brian Broesder ("Broesder"), who worked for Whitecap, traveled to Illinois to attend holiday parties with Coburn. While these parties were social in nature, Coburn alleges that much of the discussions focused on Whitecap's plans for growth and Coburn's ongoing efforts to raise capital to fuel this growth. Lastly, Whitecap directed several payments, by hard-copy checks and wire transfers, to Coburn's Chicago bank account.

The court finds that these contacts with Illinois are sufficient to establish personal jurisdiction over Whitecap. There is no question that Whitecap's actions satisfy Illinois' Long-Arm statute. Whitecap has clearly transacted business within the State of Illinois, as it has entered into the Services Agreement with Coburn, an Illinois citizen, traveled to Illinois to discuss business relationships with Coburn, and sought out potential Illinois-based investors. See 735 ILL. COMP. STAT. 5/2-209(a)(1); Arthur Young, 554 N.E.2d at 675-76. The more important question is whether the court's exercise of jurisdiction over Whitecap comports with due process.

The inquiry is whether "it is fundamentally fair to require the defendant to submit to the jurisdiction *with respect to this litigation.*" Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 780 (7th Cir. 2003) (citing Burger King, 471 U.S. at 474) (italics included). Whitecap argues that Kamisher merely traveled to Illinois for social visits, and that he did not discuss business with Coburn representatives during these trips. However, Coburn has submitted

7

evidence to demonstrate that Whitecap directed telephone calls and postal mail to Coburn's Illinois office, and sent payments to Coburn's Chicago bank account. See Pl.'s Resp., at 4; Ex. A, ¶23; Ex. B, ¶10. Moreover, Kamisher visited Illinois on several occassions to raise money for Whitecap's investment. As a result, Whitecap's activities more than satisfy the minimum contacts standard set by International Shoe, and constitute Whitecap's purposeful availment of the protection of the laws of Illinois. See Burger King, 471 U.S. at 475-76. By purposefully reaching out to the state of Illinois, and conducting business with Illinois citizens, Whitecap is on notice that it may be subject to suit in this state. See Volkswagen, 444 U.S. at 29.

The only remaining question is thus whether the court should exercise specific or general jurisdiction over Whitecap. Courts may exercise specific jurisdiction where "the defendant has purposefully established minimum contacts with the forum state, [] the cause of action arises out of or relates to those contacts and [] the exercise of jurisdiction is constitutionally reasonable." Hy Cite Corp. v. BadBusinessBureau.Com, L.L.C., 297 F. Supp. 2d 1154, 1162 (W.D. Wis. 2004). In this case, Whitecap has established minimum contacts through Kamisher's visits to Illinois on April 1, 2004, to discuss a business relationship with Coburn, as well as visits on April 19 and August 19, 2004, to solicit money from Illinois-based investors. Furthermore, Whitecap directed that payments be made to Coburn's bank account in Chicago. The cause of action in this case relates to the Services Agreement the parties negotiated, and the court has determined that exercising jurisdiction is constitutionally reasonable. The requirements for specific jurisdiction are therefore met.

"To meet the constitutional requirement for general jurisdiction, the defendant must have 'continuous and systematic general business contacts' with the forum state." Id. at 1161 (quoting Helicopteros, 466 U.S. at 416). Whitecap has developed extensive contacts with Illinois. As the

8

court has indicated, Whitecap has conducted meetings in Illinois, sent marketing materials, including monthly performance summaries to Coburn's office in Illinois, and solicited prospective Illinois-based investors. The court determines that these activities represent "continuous and systematic" contacts with Illinois. See Helicoptores, 466 U.S at 416. The court therefore finds that the exercise of general jurisdiction over Whitecap is proper in this case, and the Motion to Dismiss pursuant to Rule 12(b)(2) is denied.

## C. Whitecap's Motion to Transfer Venue

Additionally, Whitecap argues that the court must transfer venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a). See Def.'s Mot., at 1. Federal Rule of Civil Procedure 12(b)(3) provides for the dismissal of an action for improper venue. Under this rule, the court is not "obligated to limit its considerations to the pleadings nor convert the motion to one for summary judgment." Continental Cas. Co. v. American Nat. Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) (case dismissed because forum selection clause in contract required arbitration).

Under Section 1406(a), "the district court of a district in which is filed a case lying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." Continental Ins. Co. v. M/V Orsula, 354 F.3d 603, 608 (7th Cir. 2003) (quoting § 1406(a)). Furthermore, the moving party bears the burden of demonstrating that the transferee forum is the more convenient forum. See Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d. 1286, 1273 (7th Cir. 1989). There is also a presumption in favor of the plaintiff's choice of forum. "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." In re: National Presto Industries, Inc., 347 F.3d 662, 664 (7th Cir. 2003) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

9

Venue exists in a district if a "substantial part of the events or omissions giving rise to the claim occurred there." 28 U.S.C. § 1391(b)(2). The test is "not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." Chemical Waste Management, Inc. v. Sims, 870 F.Supp. 870, 875 (N.D. Ill. 1994).

Here, Kamisher came to Illinois to talk with Coburn about the service agreement between the two companies, Whitecap sent mailers and informational material to Coburn in Illinois in regards to Whitecap's investment strategy and planning, and Whitecap even directed payments made to Coburn's bank account located in Illinois. Based on these facts, the court finds that a "substantial portion of the activities" which gave rise to this litigation occurred within the Northern District of Illinois. See Chemical Waste Management, Inc., 870 F. Supp. At 875; § 1391(b)(2). Necessarily when a plaintiff and defendant "are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for change of venue; the tie is awarded to the plaintiff." In re: Nat'l Presto, 347 F.3d at 665. Whitecap has submitted no evidence to demonstrate that the facts balance strongly in its favor to justify a transfer of venue. See id. As a result, the motion to transfer pursuant to Rule 12(b)(3) and § 1406(a) is denied.

**D. Whitecap's Motion to Dismiss Pursuant to Rule 12(b)(6)**

In the alternative, Whitecap argues that Coburn's claims for a Declaratory Judgment (Count I), and breach of contract (Count II) must be dismissed pursuant to Rule 12(b)(6). Specifically, Whitecap alleges that "the Agreement does not impose any obligations upon anyone other than Kingsport and plaintiff." Def.'s Mot., at 25.

When reviewing a motion to dismiss under Rule 12(b)(6), the court merely looks at the

sufficiency of the complaint, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Johnson v. Rivera, 272 F.3d 519, 520-21 (7th Cir. 2001); it does not decide whether the plaintiff has a winning claim. See McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir. 2000) (analyzing Leatherman v. Tarrant County, 507 U.S. 163 (1993) and reversing the Rule 12(b)(6) dismissal of claims based on §§ 1981 & 1983); Alliant Energy Corp. v. Bie, 277 F.3d 916, 919 ("A complaint need only state the nature of the claim, details can wait for later stages.") Thus, "[a] complaint should not be dismissed for failure to a state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief." Szumny v. American General Finance, 246 F.3d 1065, 1067 (7th Cir. 2001) (citations and internal quotation marks omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims...Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Id. "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512. All well-pleaded facts are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. See e.g. Sprint Specturm L.P. v. City of Carmel, Ind., 361 F.3d 998, 1001 (7th Cir. 2004).

Coburn must only set out "factual allegations . . . enough to raise a right to relief above the speculative level . . . on the assumption that the allegations in the complaint are true (even if doubtful in fact)." Jennings v. Auto Meter Products, Inc., 495 F.3d 466, 472 (7th Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, - - U.S. - -, 125 S.Ct. 1955, 1964-65 (2007)). Coburn alleges that it has entered into the Services Agreement between itself and Kingsport. Coburn further claims that Kingsport changed its name to Crestview, that Crestview purchased 51% of

11

Sandhurst, that Sandhurst changed its name to Crestview Advisors, and that Crestview Advisors eventually became Whitecap. Based on theses various changes in corporate identities, general questions exist as to whether Crestview Partners or Crestview own 51.5% of Whitecap. Additional questions remain as to whether the Services Agreement binds Crestview Partners as well as Whitecap. Because Coburn has a legal claim with respect to which parties are bound to the Services Agreement, the court must deny Whitecap's motion under 12(b)(6). See Jennings, 495 F.3d at 472.

However, the issues raised in the Complaint may be better suited for "summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512; see Brown v. Ill. Dept. of Nat Resources, - -F.3d - -, 2007 WL 2410062 (7th Cir. Aug. 27, 2007). If the parties believe this case lends itself to summary judgment, they may file their motions accordingly.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss in whole, to Transfer Venue, or in the alternative dismiss in part, is denied.

IT IS SO ORDERED.

ENTER:  *[signature]*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: *Oct 3, 2007*