IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| COBURN GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case no. 07 CV-2448 |
| | ) | |
| v. | ) | Judge Gary Feinerman |
| | ) | |
| WHITECAP ADVISORS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT WHITECAP ADVISORS LLC'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S QUANTUM MERUIT CLAIM

Dated: April 4, 2011

Respectfully submitted,

By: s/Michael D. Hultquist
One of the attorneys for defendant
Whitecap Advisors, LLC

Michael D. Hultquist (ARDC No. 6194345)
**SNR DENTON US LLP**
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606
Telephone: 312.876.8000
Facsimile: 312.876.7934

Pursuant to Fed. R. Civ. P. 50(b), Defendant Whitecap Advisors LLC ("Whitecap") hereby renews its motion for judgment as a matter of law (previously made pursuant to Fed R. Civ. P. 50(a), hereinafter the "Original Motion") granting judgment in favor of Whitecap dismissing plaintiff's *quantum meruit* claim. As detailed below, the evidence submitted by plaintiff was insufficient as a matter of law to support a determination in its favor on that claim. Equally significant, the jury's own verdict form makes clear that, separate from the evidence it heard on plaintiff's contract claim, it was unable to determine the reasonable value of plaintiff's services (an essential element of *quantum meruit*). As a result, despite the jury's verdict in favor of plaintiff on that claim, Whitecap is entitled to judgment. In support of this motion, Whitecap states:

## PRELIMINARY STATEMENT

Plaintiff went to trial on two claims: one for breach of contract, and one on an alternative theory of *quantum meruit*. Following the close of evidence, Whitecap submitted the Original Motion seeking judgment in its favor as a matter of law as to both of plaintiff's claims. (*See* doc. no. 334). The Court denied that motion, and both claims were submitted to the jury. On plaintiff's contract claim, the jury returned a verdict in Whitecap's favor – specifically finding that no contract existed. On its *quantum meruit* claim, however, the jury returned a verdict for plaintiff, and awarded plaintiff damages in an amount virtually the same as that sought by plaintiff on its contract claim. A copy of the verdict form as completed by the jury (doc. no. 339) is attached as Exhibit A.

That award is not supported by law or the record. As noted in the Original Motion, plaintiff's *quantum meruit* claim required it to prove (among other things) the reasonable value of its services in the absence of a contract. However, there was no evidence in the record from

which a reasonable jury could determine any such value. Rather, the *only* evidence plaintiff chose to offer on this subject was the testimony of its industry expert who testified that the amount and duration of the fees of a third-party marketer such as plaintiff are always determined <u>by agreement</u>, and that third-party marketers are paid only what their clients <u>agree</u> to pay them. The expert made no allowance whatsoever for the determination of compensation on any other basis. Accordingly, the testimony of plaintiff's industry expert did not provide the jury with a reasonable basis to conclude that plaintiff was entitled to any more fees than it had already received.

The jury expressly found that Whitecap had no agreement with plaintiff that would entitle plaintiff to more than it earned while the parties worked together. (*See* Exh. A at 1). Because plaintiff did not offer any other evidence of damages other than what it sought under its contract claim, (such as evidence of any of its expenses, the time it spent finding investors for Whitecap, or the like), there was insufficient evidence as a matter of law from which the jury could determine the reasonable value of plaintiff's services in the absence of an agreement.

The completed verdict form makes clear that the jury itself recognized the absence of any such evidence. In particular, as detailed below, the verdict form and the Court's instructions directed the jury to determine whether and to what extent plaintiff was entitled to *quantum meruit* damages by first determining the "Fair Value" of plaintiff's services with respect to each investor it found plaintiff had introduced, and then totaling those numbers and subtracting from that amount the $866,390.49 that plaintiff had already been paid. But the completed verdict form reveals that instead of making any "Fair Value" determination, the jury simply imported numbers for each investor directly from the itemized damage chart that plaintiff submitted to the jury for its *contract* claim. (see attached Exhibit B). The jury then totaled those numbers and *added* the

2

$866,390.49 that plaintiff had already been paid before then *subtracting* that same amount to reach its final damage number. In this way, the jury "calculated" a *quantum meruit* award that was *not* based on a determination of the reasonable value of plaintiff's services with respect to each investor. Instead, it was based on plaintiff's itemized *contract* damages - the only real evidence the plaintiff provided the jury on its alleged damages.

The completed jury form reflects the logical conclusion that these "*quantum meruit* damages" were awarded in this way because the jury was presented with no means of actually measuring the *quantum meruit* value of plaintiff's services. But on the record presented to it, and as a matter of law, this was one thing that the jury *could not* do: not only is there no evidence that could support an award of contract-based damages in the absence of a contract; such an award is directly *contrary* to the record evidence (which consists solely of the testimony of plaintiff's own expert). Of equal importance, as a matter of law (and based on the Court's own instructions) the jury could only award *quantum meruit* damages based on a determination of the reasonable value of plaintiff's services with respect to each investor – a determination that the verdict sheet plainly indicates the jury *did not* make (because it *could not* do so).

In short, there is no reasonable support for the jury's award other than the evidence plaintiff and its expert offered in support of plaintiff's breach of contract claim. That is a legally insufficient basis to support a damages award on the completely separate legal theory of *quantum meruit*, which requires the jury to only award the fair value of plaintiff's services. As a result, Whitecap is entitled to judgment as a matter of law on plaintiff's *quantum meruit* claim despite the jury's verdict.

3

# ARGUMENT

Under Fed. R. Civ. P. 50:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion", which may be "renewed" after an adverse verdict. Fed. R. Civ. P. 50(b). On any such motion, "the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff. A mere scintilla of evidence, however, will not suffice." *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008) (citations and internal quotations omitted). "If, viewing the evidence in the proper light, the nonmoving party did not introduce enough evidence to support her claim, then judgment as a matter of law is correct." *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000).[1]

Here, the evidence was insufficient as a matter of law to allow a reasonable jury to find in favor of plaintiff on its *quantum meruit* claim. "To establish a quantum meruit claim under Illinois law, [p]laintiff[] must show (1) the performance of services, (2) the reasonable value of

---

[1] "Although courts in this circuit formerly applied state standards to the determination of mid-trial and post-trial motions regarding the sufficiency of the evidence, we have since adopted the federal reasonable-person standard across the board: pre-trial, mid-trial, post-trial, and on appeal, for evaluating both the merits and the quantum of relief, in diversity as well as federal question cases." *Robinson v. McNeil Consumer Healthcare*, 671 F. Supp.2d 975, 980 (N.D. Ill. 2009) (citation and internal quotations omitted), *aff'd*, 615 F.3d 861 (7th Cir. 2010).

4

those services, and (3) [defendant's] receipt of a benefit from [p]laintiff that it would be unjust for it to retain without paying compensation." *Cora v. Rancilio Macchine Per Caffe*, No. 01 C 3613, 2003 WL 21654152, *7 (N.D. Ill. Jul. 14, 2003). Thus, for a reasonable jury to have found in plaintiff's favor on this claim, there would have to have been sufficient evidence from which that jury could calculate the reasonable value of plaintiff's services in the absence of a contract. But there was none.

Instead, plaintiff chose to offer evidence *only of contractual industry compensation standards*, arguing that the value of its services was some percentage (which plaintiff argued should be 20% or even greater) of Whitecap's fees on each investment for as long as the investment remained in Whitecap's funds (which the parties have occasionally referred to as "in perpetuity"). But plaintiff's own expert (Douglas Cramer) testified categorically that under industry standards a third-party marketer does *not* get paid more than the fund manager has contractually agreed to pay. In particular:

- Cramer testified that "[i]t's standard that the manager will pay the marketer *what is contracted to pay*." (Testimony of D. Cramer, Trial Transcript (1/13/11), 714:13-14, emphasis added).

- Cramer agreed that "it's not industry practice for the manager to be required to pay commissions for a longer period of time than it agreed to" – in fact, he confirmed: "Correct. *It's the contract*." (*Id.*, 716:1-6, emphasis added).

- Cramer agreed that "[i]f the third party marketer does not have a contract with the hedge fund manager, there isn't an industry practice that says that the third party marketer should be paid commissions in perpetuity". (*Id.*, 716:25-717:4).

- Cramer conceded that he had never "heard of a third party marketer receiving fees in perpetuity" absent an agreement to do so. (*Id.*, 718:2-6).

5

Cramer's testimony is crystal clear: as a matter of industry practice, third-party marketers like plaintiff do not get paid after they stop working unless they have a contract that says they do. And they do not get paid more than what their clients agree to pay them. Cramer's testimony thus does *nothing* to establish that plaintiff's services had any value at all in the absence of a contract. Nor was there any other evidence in the record from which the jury could so conclude.

Indeed, the absence of such evidence is shown by the way the jury filled out the verdict form. For the *quantum meruit* claim, Question 15 on that form asked the jury to indicate the "Fair Value" of plaintiff's services with respect to each of the investors for which plaintiff claimed a commission, calculate the total of those amounts, and subtract from that total the $866,390.49 that plaintiff had already been paid in order to determine the amount by which the "Fair Value" of plaintiff's services exceeded the amount it had received. (*See* Exh. A at 7-8). But the jury did not do that. Instead, it based each entry on the verdict form on the "Fees Owed" column in plaintiff's chart entitled "Coburn Group's *Breach of Contract* Itemized Damages" (attached as Exh. B, emphasis added), which the jury was permitted (at plaintiff's express request to the Court) to take with it into the jury room.

More specifically, with three exceptions, the amounts filled in as the "Fair Value of Services" in response to Question 15 are lifted directly from the "Fees Owed" column of plaintiff's "Breach of Contract Itemized Damages" chart with respect to each investor. The three exceptions are the three investors as to which the jury indicated it was applying a 50% reduction for certain fees; as to those, the jury clearly applied that reduction to the amounts shown in the "Fees Owed" column on plaintiff's "Breach of Contract Itemized Damages" chart. (*Compare*

Exh. A at 7 *with* Exh. B).[2] Then, having entered these amounts and totaled them, rather than subtracting $866,390.49 (as the verdict form instructed) the jury first *added* $866,390.49, and then subtracted that amount. (*See* Exh. A at 7-8).

In this way, the jury made clear that it did *not* make any determination of the "Fair Value" of plaintiff's services with respect to each investor. Had it done so, it would have had no need to *add* $866,390.49 to its total (something the verdict form certainly did not suggest, much less direct) before subtracting that amount to get to a damage number that was supposed to represent the difference between the total of those "Fair Value" numbers and the $866,390.49 that plaintiff had already been paid. The jury plainly took this additional step because it was not making a determination of "Fair Value" at all, but was instead attempting to back into a number designed to give plaintiff an amount for each investor equal to the amounts plaintiff sought on its contract claim (albeit discounted in three instances where Whitecap contested on both the contract and *quantum meruit* claim whether Coburn has introduced that investor to Whitecap).

The jury failed to determine the "Fair Value" of plaintiff's services *precisely because* it had no evidence from which to do so. But the consequence of the absence of such evidence is not and cannot be that for each investor plaintiff receives an award based on the claimed "Fees Owed" in its "Breach of Contract Itemized Damages". Rather, the consequence is and has to be that plaintiff's *quantum meruit* claim fails for want of proof of an essential element: the

---

[2] Importantly, plaintiff also submitted a chart entitled "Coburn Group's Quantum Meruit Itemized Damages" (a copy of which is attached as Exhibit C), which the jury also had with it in the jury room at plaintiff's request. That chart contains a number for each investor that is different from the number set forth in "Coburn Group's Breach of Contract Itemized Damages" chart. None of the numbers on the *quantum meruit* chart found their way to the verdict form. (*Compare* Exh. C *with* Exh. A at 7). While the jury's question to the Court made clear that it was basing its calculation on an "itemized damage sheet" (*see, e.g.,* Jury Question dated 1/20/11 at 4:30 p.m., attached as Exhibit D), the verdict form demonstrates that the "itemized damage sheet" on which the jury based its damage award was the one for *contract* damages.

7

reasonable value of its services. This conclusion is further supported by the law of *quantum meruit*. *Quantum meruit* is not a legal theory which allows a plaintiff to recover its precise contract damages in the absence of a contract. If a plaintiff, including Coburn, wanted to ensure that it received a specifically identified remuneration, it could negotiate that rate and confirm it in a written agreement. Coburn failed to do that here. And yet Plaintiff sought to recover as much, if not more, through its *quantum meruit* claim than it ever could have recovered if it had prevailed on its contract claim. Not only is that legally unsupportable, but it is contrary to logic and the evidence at trial. Coburn never concluded an agreement on fees with Whitecap largely because the parties could not agree on a rate and duration of such payments. However, Coburn never introduced any evidence of what it should be fairly paid in the absence of any contract or agreement.

Plaintiff could have chosen to offer different or additional evidence (such as evidence of its expenses, time spent on Whitecap versus time spent on other clients and what plaintiff earned on those other engagements or the like) to attempt to demonstrate the value of its time spent, and the value of the services it provided specifically to Whitecap. However, plaintiff chose to rely solely on contractual industry standards which is insufficient as a matter of law to support a *quantum meruit* claim. See *Marta v. Nepa*, 385 A.2d 727, 730 (Del. Supr. 1978) ("[E]vidence of a standard commission is neither equivalent to nor commensurate with the evidence required for determining a recovery based on quantum meruit. A standard commission, which is *agreed upon* before services are commenced, is an arbitrary figure which may or may not reflect quantum meruit, i.e., how much the service is worth or how much compensation is deserved therefore.") (emphasis added). Consequently, Cramer's testimony on this subject is irrelevant and insufficient. Moreover, Cramer admitted that whatever fee is paid is a negotiated amount set

forth in a written agreement. That testimony provides no basis for an award of *quantum meruit* damages in an amount larger that whatever Whitecap agreed to pay. In fact, it does the opposite: it shows that it would be *contrary* to industry practice for plaintiff to be paid anything more than what Whitecap agreed to pay it. As a result – because the jury expressly found that Whitecap had not agreed to pay anything more than it had already paid (*see* Exh. A at 1) – the testimony of plaintiff's expert cannot support any award in plaintiff's favor on its *quantum meruit* claim. Similarly, Plaintiff's principal testified that he "typically" gets paid a 20% commission for the life of the investment, but has on occasion agreed to take a 15% commission. (Testimony of A. Coburn, Trial Transcript (1/10/11), 64:20-66:15). But, again, this has always been in the context of a written agreement – where plaintiff has been paid exactly what its client agreed to pay it. (*Id.* (1/11/11), 252:1-3, 252:15-20). This testimony, too, thus says nothing of the value of plaintiff's services in the absence of an agreement to pay a specific price for them. (*See infra*, n.4).

Plaintiff did not provide a single explanation or scintilla of evidence why the $866,000 it had received - in the absence of an agreement between the parties - was NOT the fair value of the services it provided. Rather, all Plaintiff did was point to the alleged benefit received by Whitecap. While a benefit received by Whitecap may be an element considered in a *quantum meruit* claim, it cannot, in and of itself, be the sole basis upon which *quantum meruit* damages may be awarded. The reasonable value of the services performed must be established and that was not done in this trial.

The lack of evidence from which the jury could assign any value to plaintiff's services (beyond what it was already paid) in the absence of a contract is, in itself, fatal to plaintiff's *quantum meruit* claim as a matter of law. *See Matthews v. Homecomings Financial Network,*
9

*Inc.*, 264 Fed.Appx. 536, 538 (7th Cir. 2008) (finding no basis for recovery in *quantum meruit* where the plaintiff had failed to "present the district court with the evidence needed to assess the market value of his services"); *accord Bernstein and Grazian, P.C. v. Grazian and Volpe, P.C.*, 402 Ill.App.3d 961, 979, 931 N.E.2d 810, 826 (2010); *see also Incase, Inc. v. Timex Corp.*, 488 F.3d 46, 53-55 (1st Cir. 2007) (district court properly awarded judgment to defendant under Fed. R. Civ. P. 50(b) where, on its *quantum meruit* claim, "[i]nstead of presenting evidence of the value of its labor and materials and other costs of creating the design, or of the value of the benefit conferred on [defendant]", plaintiff relied on evidence of what its earnings would have been if the parties had entered into a contract). That is, the jury's award cannot stand if it was based on no more than a scintilla of evidence, if any, of the reasonable value of the services performed separate and apart from the plaintiff's claimed contractual damages. What the jury did here was worse than simply making up a number. The jury clearly recognized that it had no evidence from which to determine the "Fair Value" of plaintiff's services, and therefore *did not* make any such determination. Instead, it used what it had and filled the hole in the record by awarding plaintiff an amount measured by plaintiff's "Breach of Contract Itemized Damages", even though it expressly found that there was no contract. This would be an impermissible choice on the jury's part under any circumstances – but it was particularly so here, where the only *quantum meruit* evidence in the record (the testimony of plaintiff's own expert) makes clear that the one thing the jury could *not* do in attempting to assess the value of plaintiff's services was look to contractual terms to which Whitecap had never agreed.

The jury either made up its damage numbers out of thin air or, as explained herein, more likely derived them from an impermissible source. If it did either, its award is unsupported by the evidence; and if it did the latter, its award is directly contrary to the evidence. Either way,

10

359575-3-W

Whitecap is entitled to judgment in its favor on plaintiff's *quantum meruit* claim, notwithstanding the jury's verdict.

## CONCLUSION

WHEREFORE, pursuant to Fed. R. Civ. P. 50(b), the Court should enter judgment as a matter of law in favor of Whitecap on plaintiff's *quantum meruit* claim.

Dated: April 4, 2011

                                    Respectfully submitted,
                      By:   s/Michael D. Hultquist
                                  One of the attorneys for defendant
                                  Whitecap Advisors, LLC

                                  Michael D. Hultquist (ARDC No. 6194345)
                                  **SNR DENTON US LLP**
                                  233 South Wacker Drive, Suite 7800
                                  Chicago, Illinois 60606
                                  Telephone: 312.876.8000
                                  Facsimile: 312.876.7934

12860389\V-5

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2011, I electronically filed the foregoing Defendant Whitecap Advisors LLC's Renewed Motion for Judgment as a Matter of Law on Plaintiff's *Quantum* Meruit Claim with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.

/s/ Michael D. Hultquist